PEOPLE v FOSTER

Docket No. 69257. Submitted May 7, 1984, at Grand Rapids.—Decided
November 6, 1984.

Phenoy A. Foster was convicted of kidnapping by a jury in Kent
Circuit Court and was sentenced, George R. Cook, J. She
appeals. *Held:*

1. Although the trial court at first incorrectly read a jury
instruction on the definition of insanity, the mistake was
thereafter corrected and does not warrant reversal, especially
in light of defense counsel's failure to object to the error.

2. No manifest injustice resulted from the trial court's giving
of the standard Criminal Jury Instruction on insanity in effect
at the time of the trial in this case even though the courts in a
number of cases have held that, while the instruction correctly
defines legal insanity, it incorrectly defines legal sanity. The
defense counsel failed to object at trial to the giving of the
instruction and the instructional error did not contribute to the
guilty verdict.

3. The trial court did not err in refusing to give a jury
instruction requested by defendant. The instruction requested
did not correctly and adequately state the law.

4. The trial court's giving of a jury instruction that a verdict
of guilty would neither mandate nor prevent psychiatric care
for defendant did not constitute error.

5. Defendant's argument that the prosecutor intentionally
injected the issue of defendant's race and religion into the trial
is without merit.

Affirmed.

1. CRIMINAL LAW — INSANITY — LEGAL SANITY.

A criminal defendant is legally sane only if he is shown to satisfy
both of two requirements: (1) he possessed substantial capacity

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 21 Am Jur 2d, Criminal Law § 46 *et seq.*
[2, 3] 5 Am Jur 2d, Appeal and Error §§ 890, 892.
   75 Am Jur 2d, Trial § 922.
[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[4] 21 Am Jur 2d, Criminal Law § 129.

to appreciate the wrongfulness of his conduct, and (2) he possessed substantial capacity to conform his conduct to the requirements of the law.

2. APPEAL — JURY INSTRUCTIONS — PRESUMPTIONS.
   The Court of Appeals generally presumes that a jury followed the incorrect charge where both correct and incorrect instructions are given.

3. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION.
   An erroneous instruction to a jury will not warrant reversal absent a showing of manifest injustice where there has been no objection made to the instruction at trial.

4. CRIMINAL LAW — DEFENSES — INSANITY — GUILTY BUT MENTALLY ILL.
   Mental illness and insanity are separate defenses with different consequences, insanity being an extreme of mental illness; when a person's mental illness reaches the extreme of insanity, criminal responsibility does not attach (MCL 768.21a; MSA 28.1044[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*George S. Buth,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and R. M. MAHER and C. J. HOEHN,* JJ.

PER CURIAM. Defendant appeals by leave granted from a jury conviction of kidnapping, MCL 750.349; MSA 28.581. She was sentenced to serve a term of 5 to 20 years' imprisonment.

Defendant was charged with kidnapping Joshua VanDyken on February 29, 1980. VanDyken testified that, as he was walking home from school, defendant grabbed him, threatened him with a knife, and forced him into her house. There, defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dant bound VanDyken's hands and feet. After some time, VanDyken was able to free himself and escape. Defendant was later interviewed by a police officer. During this interview, as testified to by the officer, defendant had explained that she felt that if she took two white boys off the street, held them and called Channel 8, she could reach Minister Louis Forkind, who in turn could be of assistance to two of her sons who were incarcerated.

Defendant testified at the trial and admitted "detaining" VanDyken. On cross-examination, she admitted having picked up VanDyken, having carried him into her house, and having tied his hands and feet. She again stated that she had done this to get in touch with Minister Forkind. Defendant's theory of the case, presented through her own testimony and that of experts and lay witnesses, was that defendant had been legally insane and mentally ill on February 29, 1980. Defendant was found guilty.

On appeal, defendant first raises a number of issues involving the trial court's instructions to the jury on the definition of insanity. The trial court twice read CJI 7:8:02A as it existed prior to February, 1983 (CJI 7:8:02A, Supp, 2/83). In its first reading, however, the court instructed the jury that "a person is legally *insane* if, despite mental illness, that person possesses substantial capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law she is charged with violating". (Emphasis supplied.) The mistaken use of "insane" for "sane" was later corrected when the jury requested that the trial court "define the four verdicts". We believe that the trial court sufficiently corrected this mistake, especially in light of defense counsel's failure to object to the error, so that, by itself, this error would not warrant reversal.

Defendant argues, however, that this error combined with another error to confuse the jury as to the law on insanity. On both occasions on which the trial court read the jury instructions on insanity, the court read CJI 7:08:02A as it was written at the time of trial. This instruction stated:

"If you have a reasonable doubt as to whether or not the defendant had substantial capacity to appreciate the wrongfulness of her conduct or substantial capacity to conform her conduct to the requirements of the law, you must find her not guilty by reason of insanity. Correspondingly, a person is legally sane if, despite mental illness, that person possesses substantial capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law she is charged with violating."

As has been found in a number of cases, this instruction correctly defines legal *insanity,* but incorrectly defines legal *sanity.* See *People v Gasco,* 119 Mich App 143, 145; 326 NW2d 397 (1982), *lv den* 414 Mich 951 (1982), and cases cited therein. The instruction on legal sanity permits the jury to find defendant criminally responsible if the jury concludes that defendant either knew the difference between right and wrong or could conform her conduct to the requirements of the law. However, in Michigan, a criminal defendant is sane only if she is shown to satisfy both requirements, *i.e.,* she possesses substantial capacity to appreciate the wrongfulness of her conduct and to conform her conduct to the requirements of the law. *People v Martin,* 386 Mich 407, 418; 192 NW2d 215 (1971); *People v Morris,* 92 Mich App 747, 749; 285 NW2d 446 (1979), *lv den* 408 Mich 919 (1980).

Generally, where both correct and incorrect instructions are given, this Court will presume that

the jury followed the incorrect charge. *People v Pace,* 102 Mich App 522, 535; 302 NW2d 216 (1980). However, in *People v Crawford,* 89 Mich App 30; 279 NW2d 560 (1979), *held in abeyance (on other grounds)* 414 Mich 876 (1982), and *People v Ritsema,* 105 Mich App 602; 307 NW2d 380 (1981), panels of this Court found that where CJI 7:08:02A was given without objection by the defendants, manifest injustice did not result. Plaintiff urges us to follow these cases, while defendant argues that *People v Gasco, supra,* in which the Court found reversible error despite the failure to object, represents the better reasoned approach. After carefully reviewing the record, we find that *People v Crawford, supra,* is directly applicable to the facts of this case, and we therefore affirm on this ground.

As in the cases mentioned above, there was no objection to the erroneous instruction. Thus, this Court will only reverse if it finds manifest injustice. *People v Neumann,* 35 Mich App 193; 192 NW2d 345 (1971). In this case, unlike the situation in *Gasco,* the facts strongly suggest that the instructional error did not contribute to the guilty verdict. The primary factor, as in *Crawford,* is the fact that the trial court's instructions required the jury to determine whether or not defendant was guilty but mentally ill *before* the jury could find defendant guilty. In this case, the court instructed the jury to first decide whether or not the prosecution had proven that defendant was not mentally ill. If the jury found that the prosecution had proven this, the jury was to decide whether defendant was innocent or guilty. If, however, the jury concluded that the prosecution had failed to prove that defendant was not mentally ill, the jury was to consider if defendant was legally insane. If the jury decided that defendant was not legally insane,

it was then to consider whether or not defendant was guilty but mentally ill. Thus, the jury could only have found defendant guilty under these instructions if it concluded that the prosecution had proven defendant was not mentally ill or if it had decided that defendant was not even guilty but mentally ill. Although mental illness and insanity are separate defenses with different consequences, a finding of insanity must necessarily include a finding of mental illness:

"The very definition of legal insanity contained in MCL 768.21a; MSA 28.1044(1), refers to the term 'mental illness'. Insanity by definition is an extreme of mental illness. When a person's mental illness reaches that extreme, the law provides that criminal responsibility does not attach. To put it alternatively, the statutes provide that all insane people are mentally ill but not all mentally ill people are insane." *People v Marlin Smith*, 119 Mich App 91, 95-96; 326 NW2d 434 (1982), quoting *People v Fultz*, 111 Mich App 587, 590; 314 NW2d 702 (1981).

We therefore conclude that defendant was not prejudiced by the erroneous instruction.

Other factors also distinguish this case from *Gasco*. In *Gasco,* the defense psychiatric witness acknowledged that he believed the defendant could distinguish right from wrong, but opined, however, that the defendant could not conform his conduct to the requirements of the law. Thus, an instruction that legal sanity could be premised on a finding of *either* the ability to distinguish right from wrong *or* the ability to conform conduct to the requirements of the law would have led the jury to believe that the defendant's own expert believed the defendant to be sane. In this case, defendant's expert psychiatric witness testified that she believed defendant could *neither* distin-

guish right from wrong nor conform her conduct to the requirements of the law. Finally, in *Gasco,* the jury was given a photocopy of CJI 7:8:02A for use during its deliberations, over the objection of the defense counsel. This did not occur in this case. We therefore conclude that manifest injustice does not require reversal on this issue, even in light of the original (but corrected) misreading of the jury instruction.

Defendant also argues that the trial court improperly refused to give the following instruction, as requested by defense counsel:

"A not guilty by reason of insanity means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the Court is satisfied, that such person has recovered her sanity and will not in the reasonable future be dangerous to herself or others."

Instead, the court read CJI 7:8:08 to the jury. We find no error in the trial court's decision. CJI 7:8:08 correctly and adequately stated the law as provided in MCL 330.2050; MSA 14.800(1050). Defendant's instruction did not do so.

Defendant's last claim of instructional error is that the trial court, over defense counsel's objection, instructed the jury as follows:

"Let me say this, that a verdict of guilty does not mandate psychiatric care, but it does not prevent it either. It is up then to the administrative people of the Department of Corrections."

This instruction came immediately after the court

read CJI 7:8:10 (disposition of a defendant found guilty but mentally ill) and after the jury foreperson had informed the trial court that the jury was still somewhat confused about whether or not a guilty verdict would mean that defendant could receive psychiatric help if it was needed.

We do not find that the giving of this instruction constituted error. Defense counsel objected to the instruction because he was "not aware of any policies * * * that mandates [sic] or even gives [sic] the Department of Corrections their opportunity to give psychiatric care". The trial court pointed out that the prison facilities included a separate psychiatric unit and that the department had the option to refer any prisoner for such care. Defense counsel continued to object. On appeal, defendant has not shown, or even attempted to show, this Court how the trial court's instruction misled the jury. In addition, we note that defendant on appeal has mistakenly read the jury's original question as an inquiry about the disposition of a defendant found guilty but mentally ill, rather than about the disposition of a defendant found guilty. We therefore affirm on this issue.

Defendant's final argument on appeal is that the prosecutor intentionally injected the issue of defendant's race and religion into the trial. This argument is without merit. Defendant's defense was that defendant was insane, an insanity which was premised on deluded religious beliefs that whites were devils who could control and oppose blacks, and that defendant's actions against her white victim were manifestations of this disease. The prosecutor merely attempted to clarify this testimony.

Affirmed.