PEOPLE v FEDERICO

Docket No. 77653. Submitted August 22, 1985, at Detroit.—Decided November 5, 1985. Leave to appeal applied for.

Defendant, Dolores J. Federico, was convicted of assault with

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Trial § 1061.
  Instructions urging dissenting jurors in state criminal case to give due consideration to opinion of majority (Allen charge)-modern cases. 97 ALR3d 96.
[2] Am Jur 2d, Appeal and Error §§ 533, 535.
  See the annotations in the ALR3d/4th Quick Index under Appeal and Error.
[3] Am Jur 2d, Robbery §§ 85-91.
  Attempted robbery, or assault to commit robbery, as affected by intent to collect or secure debt or claim. 88 ALR3d 1309.
[4] Am Jur 2d, Appeal and Error §§ 601, 602.
  Modern status of rules governing legal effect of failure to object to admission of extrinsic evidence violative of parol evidence rules. 81 ALR3d 249.
[5] Am Jur 2d, Witnesses §§ 478-483.
  See the annotations in the ALR3d/4th Quick Index under Cross-Examination.
[6] Am Jur 2d, Criminal Law § 133.
[7, 9] Am Jur 2d, Appeal and Error §§ 545 *et seq.*
  Failure to object to improper questions or comments as to defendant's pretrial silence or failure to testify as constituting waiver of right to complain of error-modern cases. 32 ALR4th 774.
[8] Am Jur 2d, Criminal Law § 166.
  Acquittal of principal, or his conviction of lesser degree of offense, as affecting prosecution of accessory, or aider and abettor. 9 ALR4th 972.
[10] Am Jur 2d, Appeal and Error § 977.
  See the annotations in the ALR3d/4th Quick Index under Transcript.
[11] Am Jur 2d, Criminal Law §§ 525-631.
  See the annotations in the ALR3d/4th Quick Index under Sentence and Punishment.
[12] Am Jur 2d, Criminal Law §§ 967-992.
  See the annotations in the ALR3d/4th Quick Index under Assistance of Counsel.

intent to rob and steal being armed and felony-firearm, Wayne Circuit Court, Thomas J. Foley, J. Defendant appealed. *Held:*

1. Supplemental instruction to a deadlocked jury must not substantially depart from the ABA Standard Jury Instruction. Substantial departure from the standard is grounds for reversal, and the test for determining whether a departure is substantial is whether the instruction had an undue tendency to coerce a decision. The trial court's comments to the deadlocked jury which were extraneous to the ABA Standard Jury Instruction, when examined in light of the surrounding circumstances, do not constitute grounds for reversal.

2. Defendant claimed that the trial court made numerous errors in instructing the jury. None of the errors complained of were objected to at trial and are not grounds for reversal unless the instruction resulted in a miscarriage of justice. The Court found no such miscarriage.

3. The fact that the prosecutor on cross-examination delved into details of defendant's character and drug-dealing activities, to which defendant testified on direct examination, does not constitute grounds for reversal.

4. None of the unobjected-to comments and arguments of the prosecutor require reversal. Nor is reversal required because of the introduction of evidence at trial to which the defendant objected for the first time on appeal.

5. Reversal is not required because of the inability to produce a transcript of the court's reinstruction to the jury. Where only a portion of the trial transcript is missing, the surviving record must be reviewed in terms of whether it is sufficient to allow evaluation of defendant's claim on appeal. The sufficiency of the record depends on the questions that must be asked of it. The record was sufficient to allow complete evaluation of defendant's claims.

6. The trial court did not err in considering defendant's lack of remorse in sentencing her. And, under the circumstances, her sentence of from 20 to 60 years on the charge of assault with intent to rob while armed did not shock the conscience of the Court of Appeals.

7. Defendant was not entitled to a new trial because of an alleged serious mistake of counsel. The Court could not find that, but for the alleged serious mistake, defendant would have had a reasonably likely chance of acquittal.

Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES.
   Supplemental instruction to a deadlocked jury must not substan-

tially depart from the ABA Standard Jury Instruction; substantial departure from the standard is grounds for reversal, and the test for determining whether a departure is substantial is whether the instruction had an undue tendency to coerce a decision (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury [Approved Draft, 1968], Standard 5.4).

2. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION — COURT RULES.

Objection to an allegedly erroneous jury instruction before the jury retires is a prerequisite to raising the issue on appeal; where no objection is raised to alleged errors in jury instructions a verdict will not be set aside unless the omissions or error pertain to a basic and controlling issue in the case and have resulted in a miscarriage of justice (MCL 769.26; MSA 28.1096; GCR 1963, 516.2; MCR 2.516[c]).

3. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO ROB BEING ARMED.

The elements of assault with intent to rob being armed are: 1) an assault with force and violence; 2) an intent to rob and steal; and 3) defendant's being armed.

4. APPEAL — EVIDENCE — PRESERVING QUESTION.

An objection to the admission of evidence on a basis not raised in the trial court will not be heard for the first time on appeal absent a showing of manifest injustice.

5. CRIMINAL LAW — CROSS-EXAMINATION OF DEFENDANT.

A prosecutor may cross-examine a defendant and defense witnesses on those matters which were raised on direct examination.

6. CRIMINAL LAW — EVIDENCE — MOTIVE.

An accused's motive is always relevant because it bears on either his identity as the perpetrator of the offense or the strength of his defense; other acts of the accused which tend to show a motive may be proved notwithstanding the fact that such proof may show or tend to show the commission of another crime by him (MCL 768.27; MSA 28.1050).

7. CRIMINAL LAW — APPEAL — PROSECUTORIAL COMMENT — PRESERVING QUESTION.

The absence of objection during trial precludes appellate review of allegedly prejudicial prosecutorial remarks unless the prejudicial effect was so great that it could not have been cured by a

cautionary instruction and failure to consider the issue would result in a miscarriage of justice.

8. CRIMINAL LAW — ACCOMPLICES — FAVORABLE TREATMENT — APPEAL.

A prosecutor has a duty to disclose promises made to obtain an accomplice's testimony and a reference to a plea agreement with an accomplice which contained a promise to testify truthfully is not, without more, grounds for reversal.

9. APPEAL — PRESERVING QUESTION.

A mere statement of position without argument or citation of authority is insufficient to bring an issue before an appellate court.

10. APPEAL — CRIMINAL LAW — INCOMPLETE RECORD.

The Court of Appeals, in reviewing a defendant's claim that his right to appellate review has been denied because portions of the trial transcript are missing, must determine whether the unavailability of those portions of the transcript so impedes the enjoyment of the defendant's constitutional right to an appeal that a new trial must be ordered; the defendant's right is satisfied where the surviving record is sufficient to allow the evaluation of defendant's claims on appeal; the sufficiency of the record depends upon the questions which must be asked of it.

11. CRIMINAL LAW — SENTENCING — REMORSE.

It is neither clearly erroneous nor improper for a trial court to consider a criminal defendant's lack of remorse in imposing sentence.

12. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.

The standard to determine whether under the Michigan Constitution a defendant had effective assistance of counsel is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations; even where assistance of counsel satisfies the constitutional requirements the defendant is entitled to a fair trial; a defendant can be denied a fair trial if his attorney makes a serious mistake; a court should not grant a new trial unless it finds that but for the mistake defendant would have had a reasonably likely chance for acquittal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prose-

cuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith),* for defendant on appeal.

Before: MacKenzie, P.J., and Cynar and H. E. Deming,* JJ.

Per Curiam. On August 11, 1983, defendant was convicted by a jury in Wayne County Circuit Court of assault with a dangerous weapon with intent to rob and steal, MCL 750.90; MSA 28.284, and felony-firearm, MCL 750.227b; MSA 28.424(2). Defendant was found not guilty of first-degree murder, MCL 750.316; MSA 28.548, and second-degree murder, MCL 750.317; MSA 28.549.

The circumstances surrounding defendant's arrest and conviction arose out of the shooting death of Jess Brown on October 21, 1982. Prior to the shooting, defendant and her two accomplices, George McCue, Jr., and Rick Sparks, allegedly developed a plan to rob Brown.

McCue and Sparks testified for the prosecution at trial pursuant to an agreement that they would only be charged with assault with intent to rob while armed, MCL 750.90; MSA 28.284. Both McCue and Sparks testified that they were indebted to defendant for drugs which they had purchased from her. McCue and Sparks owed defendant $200 each for marijuana and heroin purchases, respectively.

McCue and Sparks testified that defendant approached them and suggested that they commit a robbery as a means of getting the money to settle

---

* Circuit judge, sitting on the Court of Appeals by assignment.

their debts with her. McCue or Sparks suggested Jess Brown as a possible robbery victim because he allegedly sold marijuana and usually carried large sums of cash. The testimony of McCue and Sparks reveals the following.

On October 21, 1982, defendant, Sparks and McCue met at Sparks's apartment at approximately 5 p.m. and planned the details of the robbery. McCue arranged earlier in the day to meet with Brown, who wanted to purchase a half pound to a pound of marijuana. McCue agreed to accompany Brown to Lotz Road in Canton, Michigan, where the planned robbery would take place.

McCue and Brown met at approximately 7 p.m. and drove to Lotz Road. Pursuant to the plan, defendant's car was parked on Lotz Road with the hood up. McCue and Brown pulled up alongside defendant's car and defendant asked for some assistance in getting the car started. Sparks was in the back seat of defendant's car, apparently out of sight. As McCue and Brown exited from the car, McCue heard a gunshot and jumped into some nearby weeds. He then heard a noise resembling the sound of a car hood being shut. McCue then walked over to Brown who was lying on the pavement. After checking Brown's condition and getting no response, he went to the nearest house and contacted the police and an ambulance.

Sparks testified that, as the vehicle occupied by McCue and Brown turned onto Lotz Road, he observed defendant place a .38-caliber pistol under her coat. He got down on the floor of defendant's car. Defendant exited from the car and approximately 20 seconds later Sparks heard a firecracker-type noise. Defendant then returned to the car and threw the gun on the seat and drove off. As defendant drove the car back to her apartment, she allegedly stated several times "I shot him",

and appeared to be very upset. Defendant explained to Sparks that she didn't intend to shoot Brown, but that the hammer was pulled back on the gun and it accidentally went off. Upon arrival at defendant's apartment, defendant cleaned the fingerprints off the gun.

Defendant testified and presented a version of the incident that was contrary to the testimony presented by her two accomplices. Defendant's testimony indicates that she did not take part in the plan to rob Brown. She agreed to meet Sparks and Mcue on Lotz Road to transfer a quantity of drugs to Sparks which he was allegedly planning to resell to other people. Defendant drove to Lotz Road alone to deliver the narcotics to Sparks as agreed. McCue pulled up in a van driven by another party. Unable to recognize the driver, defendant decided to back out of the deal. McCue then allegedly knocked defendant down. The driver of the van, Jess Brown, exited from the vehicle and a gun which McCue was allegedly carrying fell to the ground. Defendant grabbed the gun and pointed it at McCue and Brown. Sparks suddenly appeared on the scene and snatched the gun from defendant and the gun went off immediately thereafter. Brown dropped to the ground. Defendant became scared and jumped in her car and drove off.

Defendant raises several issues on appeal, none of which require reversal. We discuss the issues in the order raised by defendant.

I

First, defendant argues that the trial court committed reversible error by giving the deadlocked jury an instruction that substantially deviated from the ABA Standard Jury Instruction 5.4. We disagree.

In *People v Sullivan,* 392 Mich 324, 341-342; 220 NW2d 441 (1974), our Supreme Court adopted ABA Standard Jury Instruction 5.4[1] and held that any substantial departure from that instruction constitutes grounds for reversal.

Defendant argues that the *Sullivan* Court created a prophylactic rule that makes the *actual* coercive effect of such an instruction irrelevant. The Supreme Court revisited *Sullivan* in *People v Hardin,* 421 Mich 296; 365 NW2d 101 (1984), where it elaborated and clarified its previous holding. The *Hardin* Court made it clear that whether any deviation from ABA standard 5.4 is substantial in the sense that reversal is required depends upon whether the deviation renders the instruction unfair because it might have been unduly coercive. 421 Mich 316. The Court rejected the argument that coercive effect is irrelevant.

In the present case, the trial court made certain

[1] ABA Standard Jury Instruction 5.4 provides:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

comments which were extraneous to the ABA standard. The court urged the jurors to avoid making emphatic expressions of their opinion of the case at the outset, thereby making it difficult to retreat from that position if it was shown to be incorrect. The lower court also informed the jury that, if every juror is fair and reasonable, a jury can almost always agree.

The following principles set forth in *Hardin, supra,* are instructive in resolving the issue presented here:

"Where additional language contains 'no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion,' *People v Holmes,* 132 Mich App 730, 749; 349 NW2d 230 (1984), that additional language rarely would constitute a substantial departure. See also *People v Bookout,* 111 Mich App 399, 404; 314 NW2d 637 (1981)." 421 Mich 315.

Applying the above principles to the present case, we conclude that, although the trial court's instruction departed from ABA standard 5.4, the degree and nature of the departure, when examined in light of the surrounding circumstances, does not constitute grounds for reversal.

II

Defendant next argues that a manifest injustice resulted from the errors in the trial court's primary instructions to the jury.

We note intially that defendant failed to object to any of the trial court's jury instructions. When no objection is made to an alleged error in the instructions, a verdict will not be set aside on the basis of such error unless it has resulted in a

miscarriage of justice. *People v Trammell,* 70 Mich App 351; 247 NW2d 311 (1976); MCL 769.26; MSA 28.1096; see also GCR 1963, 516.2 [now MCR 2.516(C)]. A miscarriage of justice occurs when the erroneous or omitted instructions pertain to a basic and controlling issue in the case. *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977), *lv den* 402 Mich 909 (1978). Even though jury instructions are somewhat imperfect, there is no error if they fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant. *People v Bender,* 124 Mich App 571, 574-575; 335 NW2d 85 (1983).

Defendant first contends that the trial court's unobjected-to felony-firearm instruction constituted reversible error because it required the jury to first convict defendant of either murder or assault with intent to rob while being armed before they could consider the felony-firearm charge. We note that the question of whether defendant actually possessed a firearm during the commission of a felony is at issue in this case.

We consider the defendant's claim of error by reviewing the challenged jury instructions in their entirety. *People v Ritsema,* 105 Mich App 602, 609; 307 NW2d 380 (1981), *lv den* 413 Mich 934 (1982).

The trial court's preliminary comments on the felony-firearm count were as follows:

"The next charge, of course, is felony-firearm. Felony-firearm is premised upon the fact that it is a weapon, a revolver, whatever might be used in the commission of another felony. In order for you to determine the question of felony-firearm, you first must determine whether there is an underlying felony, in this case the one we are assessed with now, felony murder. If you find felony murder, you must deliberate on the question of whether, in fact, there was a felony-firearm violation? Has that been defined for you."

The trial court subsequently instructed the jury on the felony-firearm charge as follows:

"Now, I also said that each of these counts, each of these particular crimes that you will be deliberating on, felony murder, second-degree murder, assault and battery with intent to rob, being armed, there is a second consideration. If you find the underlying felony to exist, then you must determine whether the felony-firearms existed in each of these cases.

"I have given it to you only once at the end of the three charges so that you don't have to sit through the same thing three times.

"Now take felony-firearms. This is shorter and more to the point. If you find that the Defendant attempted to commit the crime of felony murder, second-degree murder or assault with intent to rob being armed, then you must further consider whether or not she was carrying a firearm or had one in her possession at the time. That is a second count or a crime charged against the Defendant. Actually, it is a count which follows after each felony."

In *People v Lewis,* 415 Mich 443, 455; 330 NW2d 16 (1982), *reh den sub nom People v Gary Johnson* 417 Mich 1104 (1983), the Supreme Court reviewed the trial court's felony-firearm instruction and held that:

"The judge may and should instruct the jury that a person cannot be convicted of felony-firearm unless the jury finds that 'he commit[ted] or attempt[ed] to commit a felony'. Because conviction of a felony or an attempt to commit a felony is not an element of the offense, *the jury may not be instructed that it must convict of an underlying felony in order to convict of felony-firearm.*" (Emphasis supplied; footnote omitted.)

We find that the trial court's oral jury instruction in this case, quoted above, did not instruct the jury that they must convict defendant of an under-

lying felony in order to convict defendant of felony-firearm. We note, however, that the trial court did not instruct the jury that they could return a verdict of guilty on the felony-firearm charge without actually convicting defendant of an underlying felony. However, the jury returned a verdict of guilty on the underlying felony of assault with intent to rob while armed and felony-firearm charges.

As part of the jury instruction the trial court also submitted a verdict form to the jury which we find to be erroneous for the following reasons. The verdict form listed the three underlying felonies of felony murder, second-degree murder and assault with intent to rob being armed and asked the jury to determine whether defendant was guilty or not guilty on each count. After each of the counts the verdict form states "[i]f the defendant is found guilty of the underlying felony of [felony murder, second-degree murder and assault with intent to rob being armed] then you may determine" whether defendant is guilty of felony-firearm. We conclude that the verdict form was set up so that the jury had to find defendant guilty of one of the underlying felonies before it could determine whether defendant was guilty of felony-firearm. We find that the verdict form was therefore improper. *Lewis, supra.*

The trial court gave both a correct and incorrect jury instruction on felony-firearm. "Generally, where both correct and incorrect instructions are given, this Court will presume that the jury followed the incorrect charge." *People v Foster,* 138 Mich App 734, 737-738; 367 NW2d 349 (1984). Because defendant failed to object to the felony-firearm instruction at trial, we must now determine whether a manifest injustice resulted from the trial court's use of an improper jury form.

In *People v Lawless,* 136 Mich App 628; 357 NW2d 724 (1984), this Court reviewed an unobjected-to erroneous jury instruction on felony-firearm. The trial court in *Lawless* instructed the jury that it could not find the defendant guilty of felony-firearm but not guilty of the underlying felony of armed robbery. After citing the Supreme Court's holding in *Lewis, supra,* which was decided after the trial in *Lawless,* this Court held that, under the circumstances of the case, no manifest injustice resulted from the trial court's jury instruction. In so holding, the Court noted the following. Defendant Lawless admitted that he held up a gas station attendant at gunpoint. The Court further noted that there was no testimony that defendant Lawless did not have the weapon required for a felony-firearm, the evidence presented against defendant Lawless was overwhelming, and *Lewis, supra,* was not decided until after the trial and verdict in *Lawless.*

While we conclude that the verdict form presented to the jury was set up so that the felony-firearm charge could only be considered if the jury found defendant guilty of one of the three underlying felonies, a manifest injustice did not result because the error was harmless. The jury found that the evidence established beyond a reasonable doubt that defendant was guilty of assault with intent to rob while armed.

Defendant further contends that the trial court erred in giving the following instruction on the use of police witness testimony:

"Police witnesses may properly be used by the prosecution and you may convict upon that testimony alone if you believe that testimony *or* if it proves guilt of the Defendant beyond a reasonable doubt. Now, in deciding whether or not you believe the accomplice's testimony, you should decide it by the following considerations:

"You may consider whether there has been any reward or inducement offered which may have caused him to testify fully. You may consider whether the testimony was offered by the witness being granted immunity from prosecution, receiving promise of leniency or being allowed to a plea of guilty of a lesser offense. You may consider whether the testimony is freely given in such a way as to place guilt upon the Defendant or to further the witness' own interest or any bias or motive which may be prompted or induced by the testimony of this witness. So, to summarize, you should examine any accomplice's testimony with greater care than you would have used to examine the testimony of an ordinary witness. You should be careful and completely examine the testimony before a conviction is based upon it." (Emphasis added.)

Defendant contends that the word "or" should obviously have been "and" and this error essentially misinformed the jury that they could convict on less than proof beyond a reasonable doubt. Defendant did not object to the above quoted jury instruction.

Reviewing the jury instructions as a whole, *Ritsema, supra,* we must determine whether a manifest injustice resulted from the claimed error.

The record indicates that the trial court properly instructed the jury on the proof beyond a reasonable doubt standard numerous times throughout the instructions. The trial court also instructed the jury on how to evaluate the credibility of the two police witnesses in this case who were both admitted heroin users. The trial court stated in pertinent part: "* * * a witness who is an addict, informant may properly be used by the prosecution and you may convict by that testimony alone if you believe the testimony alone proves the guilt of the Defendant beyond a reasonable doubt".

Our examination of the trial court's jury instruc-

tion as a whole convinces us that the court's misstatement does not constitute grounds for reversal. Defendant's right to be convicted only upon proof beyond a reasonable doubt was adequately protected by the court's numerous instructions to that effect. *Bender, supra,* pp 574-575.

Defendant next contends that the trial court erroneously instructed the jury that the requisite specific intent for assault with intent to commit armed robbery is an intent to permanently deprive the victim of his property. Assault with intent to rob while armed is a specific intent crime. *People v Harris,* 110 Mich App 636, 641; 313 NW2d 354 (1981). The elements of this crime consist of: 1) an assault with force and violence; 2) an intent to rob and steal; and 3) defendant's being armed. *People v Bryan,* 92 Mich App 208, 225; 284 NW2d 765 (1979), *lv den* 408 Mich 914 (1980). Hence, the specific intent required to prove this crime is intent to rob and steal.

In the case before us the trial court had initially correctly instructed the jury twice on the elements of robbery and assault with intent to rob while armed. That part of the jury instructions alleged to be erroneous, "intent to deprive the deceased of his property permanently", should not be considered standing by itself. This portion of the instruction was concerned with the meaning of specific intent to rob being armed. The total instructions and most certainly what was stated immediately before and following the alleged erroneous instruction must be considered as a whole. There was no objection to the instruction. Had there been, this one word could have been easily clarified. All the same, we do not find manifest injustice resulted. We decline to reverse on this point.

Defendant further contends that the trial court gave instructions on direct and circumstantial evi-

dence and use of certain types of testimony which were either confusing or unintelligible. Due to defendant's failure to object to the challenged instructions at trial, appellate review is precluded absent a manifest injustice.

Reviewing the challenged instructions on direct and circumstantial evidence in their entirety, we find defendant suffered no manifest injustice.

### III

Under this issue defendant argues that the prosecutor's cross-examination and argument denied her a fair trial. Defendant raises ten separate claims of error, none of which require reversal.

Defendant first asserts that she was denied a fair trial because of the prosecutor's cross-examination of her which impermissibly injected uncharged crimes into the trial. On direct examination, defendant admitted that she had been dealing in heroin and marijuana for seven years. On cross-examination, the prosecutor delved into the details of defendant's drug operation and the evils associated with the narcotics trafficking business.

We note, initially, that defense counsel never objected to the majority of the prosecutor's cross-examination questions concerning defendant's activities as a heroin trafficker. Specific objections to the admission of evidence cannot be raised for the first time on appeal absent a showing of manifest injustice. *People v Hayward,* 127 Mich App 50, 59; 338 NW2d 549 (1983).

On direct examination defendant testified about her drug trafficking activities. In Michigan courts the prosecutor may question witnesses on those matters raised on direct examination. *People v Thomas Jones,* 73 Mich App 107, 110; 251 NW2d 264 (1976); *People v Roger Johnson,* 382 Mich 632;

172 NW2d 369 (1969), *cert den* 397 US 1079; 90 S Ct 1533; 25 L Ed 2d 816 (1970). Thus, we find no error.

Defendant next contends that the prosecutor improperly elicited character evidence for the purpose of showing that defendant acted consistently with that character in killing Brown.

A prosecutor may question witnesses on those matters which were raised on direct examination. *Thomas Jones, supra,* p 110; *Roger Johnson, supra.* Defendant does not indicate what specific evidence, elicited by the prosecutor, amounted to an attempt to attack her character for the purpose of showing that she acted in conformity therewith in killing Brown. Our review of the record indicates that defendant testified on direct examination that the reason she was involved in selling drugs was because she couldn't find a job and drug trafficking was the only thing she knew how to do. Defendant also testified that she had to support her child. Defendant stated on direct examination that "anyone who uses narcotics would rip their own mother off, so I would not trust them no father *[sic]* than I can throw them". On cross-examination the prosecutor asked defendant questions concerning whether she thought the narcotics business was an honest business and whether she could have found some other means of supporting herself. We conclude that defendant opened the door to this line of questioning during direct examination. We find no error here.

Next, defendant contends that the prosecutor argued facts which supplied a motive and undermined defendant's credibility, without evidentiary support. Defendant claims that the prosecutor, without evidentiary support, attempted to develop his theory of the case that the alleged robbery and the killing was done so that defendant could pay

her suppliers and to destroy her reputation as an easy mark on the streets.

Generally, other acts of a criminal defendant which tend to show a motive may be proved notwithstanding the fact that such proof may show or tend to show the commission of another crime by defendant. MCL 768.27; MSA 28.1050; *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973). *Cf., People v Jones,* 119 Mich App 164; 326 NW2d 411 (1982). A witness may be cross-examined on any matter relevant to any issue in the case. MRE 611(b). An accused's motive is always relevant because it bears on either his identity as the perpetrator of the offense or the strength of his defense. *People v Flynn,* 93 Mich App 713, 721-722; 287 NW2d 329 (1979), *lv den* 409 Mich 852 (1980).

Since the accused's motive in committing an alleged crime is always relevant, the prosecutor was properly permitted—within the bounds of fair play; *i.e.,* not to unduly emphasize the prejudicial aspects of the evidence—to introduce evidence relating to defendant's indebtedness to her suppliers and her reputation as an easy mark on the streets.

Our review of the record indicates the following: that defendant's activities as a narcotics dealer were raised by her on direct examination, that defense counsel did not object to the prosecutor's line of questioning concerning the fact that defendant purchased narcotics on consignment, and that the trial court gave a limiting jury instruction on the use of evidence concerning defendant's activities as a drug dealer. Under the circumstances presented, we find no error. MCL 768.27; MSA 28.1050.

Next, defendant claims that she was denied a fair trial because of improper argument by the prosecutor. The prosecutor's closing argument is

alleged to contain several statements for which there was no evidentiary support presented at trial.

Defendant did not object to the prosecutor's closing argument. Appellate review is therefore foreclosed unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice. *People v Jancar,* 140 Mich 222, 233; 363 NW2d 455 (1985); *People v Duncan,* 402 Mich 1, 15-17; 260 NW2d 58 (1977). We have throughly reviewed the record in this case, and do not believe that the prosecutor's closing argument denied defendant her right to a fair trial. In all but one instance, which we discuss below, the challenged remarks made by the prosecutor during closing argument were reasonable inferences based on the evidence. *People v Jansson,* 116 Mich App 674, 694; 323 NW2d 508 (1982).

The prosecutor's argument that defendant turned herself in only because her suppliers refused to continue dealing with her and because she ran out of money was not supported by the evidence. In this instance as well, however, defense counsel failed to object and request a curative instruction. We find that the prejudicial propensity of this improper argument could have been cured by a prompt objection and curative instruction. We therefore decline to reverse on this point.

Defendant next claims that it was reversible error for the prosecutor to introduce, for the first time on cross-examination of defendant, an alleged admission of guilt contained in a letter written by defendant to her husband.

We note that defendant did not object to the admission of the letter at trial and did not request a curative instruction. Hence, defendant raises this issue for the first time on appeal. We deem

this claim of error to be waived absent manifest injustice to defendant. *People v Goddard,* 135 Mich App 128, 139; 352 NW2d 367 (1984). For reasons stated below, we find no manifest injustice resulted as a result of the prosecutor's introduction of the defendant's letter for the first time on cross-examination.

The letter at issue was written by defendant after she was arrested and incarcerated for the instant offense and contains the following statement:

"I thought that we could have a nice life together, but all of this shit happened. It did happen the way they said it happened, but that is not important. What is important to me right now is where my daughter is."

Our review of the record indicates that the prosecutor introduced the letter containing the above statement after defendant presented a version of the incident contrary to that of her accomplices. In closing argument, the prosecutor primarily relied on the letter to discredit defendant. It does not appear that the prosecutor sat back and intentionally harbored evidence of the letter for the purpose of admitting it in an effort to dramatically present it to the jury. See *People v Kraai,* 92 Mich App 398, 410; 285 NW2d 309 (1979), *lv den* 407 Mich 954 (1980). We conclude that reversal is not required on this point.

Defendant next claims that the prosecutor committed reversible error by informing the jury on several occasions that the accomplice witnesses had entered into an agreement with the prosecutor's office to testify truthfully in exchange for being charged only with assault with intent to rob while being armed. Defendant claims that the prosecutor's disclosure of the agreement amounted

to an impermissible vouching for the credibility of those witnesses. However, defendant made no objection to this testimony at trial. Under such circumstances we will reverse only if presented with a manifest and serious error resulting in fundamental injustice. *People v Williams*, 123 Mich App 752, 755; 333 NW2d 577 (1983).

The prosecutor has a duty to disclose promises made to obtain an accomplice's testimony. *People v Atkins*, 397 Mich 163, 173; 243 NW2d 292 (1976). Mere references to a plea agreement containing a promise of truthfulness is not, without more, grounds for reversal. Such agreements should be admitted with great caution and should not be used to suggest that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully. *Williams, supra,* pp 755-756.

We find no reversible error was committed as a result of the prosecutor's disclosure of the promises made to obtain the accomplice's testimony. The record indicates that the prosecutor did not disclose such agreements in an attempt to suggest that the government had some special knowledge, not known to the jury, that those witnesses were testifying truthfully. The agreements were disclosed in accordance with the prosecutor's duty. *Williams, supra.*

Defendant's claim that it was error for the prosecution to elicit from the two accomplices prior statements consistent with their in-court testimony implicating defendant is without merit. We find that no manifest injustice resulted from the erroneous admission of the witnesses' prior consistent statements. Defense counsel's failure to object therefore precludes appellate review. *People v Vaughn*, 128 Mich App 270, 275; 340 NW2d 310 (1983), *lv den* 418 Mich 917 (1984).

Defendant cites no authority in support of her position that reversible error was committed as a result of the prosecutor's remarks during jury voir dire concerning the use of accomplice testimony and argument concerning plea bargaining which tended to denigrate the value of the agreement with defendant's accomplices. Defendant did not object to the prosecutor's remarks during jury voir dire or closing argument. A mere statement of position without argument or citation of authority is insufficient to bring the issue before an appellate court. *People v Sullivan,* 97 Mich App 488, 491; 296 NW2d 81 (1980), *lv den* 412 Mich 902 (1982). Defendant has therefore abandoned this issue.

Defendant next claims that the prosecutor made certain remarks concerning the letter she wrote to her husband during closing argument that unfairly infringed upon her constitutional rights to prepare a defense and to effective assistance of counsel. The challenged unobjected-to remarks were as follows:

"[L]ook at this letter too and just remember that certainly these things don't come up as a surprise. We have to disclose to the defendant all the information we have and all the items we have before the trial. Certainly she knew we had this and could try to make up a logical story. She didn't have to just wait until the last second. Look at the letter and see if you come up, as I did, with the same train of thought."

Defendant relies on this Court's holding in *People v Fredericks,* 125 Mich App 114; 335 NW2d 919 (1983), in support of her claim of error.

In *Fredericks* the prosecutor argued the following without objection:

"[The defendant] has had the added benefit of sitting

here throughout the trial and hearing what it is that these witnesses have said against him and if he wanted[,] to fabricate his story to kind of coincide with what they said as much as possible so as to seem believable to you * * *." 125 Mich App 118-119.

On appeal the defendant argued that the prosecutor's comment infringed his right to be present at his trial. The *Fredericks* Court reviewed defendant's claim of error and noted that the right of an accused to be present at his trial is a fundamental right which is grounded in the federal constitution, US Const, Am VI, and guaranteed by statute in Michigan, MCL 768.3; MSA 28.1026. The Court held that a prosecutor may not burden a defendant's right to be present at trial. The Court further held that a prosecutor impermissibly burdens this right when he attempts to discredit the defendant's testimony by reference to the defendant's presence at trial. Because the prosecutor's error in *Fredericks* was found to have resulted in a miscarriage of justice, defendant's conviction was reversed.

The challenged remark in this case does not involve an attempt by the prosecutor to discredit defendant's testimony by reference to defendant's presence at trial. We find that the remark did not infringe upon any constitutionally or statutorily protected right of the defendant. We therefore decline to extend the rationale of *Fredericks, supra,* to the facts presented herein and conclude that no manifest injustice resulted from the prosecutor's argument concerning defendant's letter.

Defendant raises several claims of error related to the prosecutor's alleged misstatement of the law on double jeopardy, prior similar acts evidence and flight. Defendant's failure to object timely to the prosecutor's alleged misstatement of the law re-

garding these matters precludes appellate review unless a curative instruction would not have cured any resulting prejudice and failure to consider the issue would result in a miscarriage of justice. *Jancar, supra, Duncan, supra.*

While the prosecutor's remark concerning defendant's flight being evidence of guilt was erroneous, *People v Kraai, supra,* p 409, the error could have been cured by a curative instruction. Indeed, the trial court did properly instruct the jury on the question of flight.

As to the prosecutor's remarks concerning double jeopardy and prior similar acts, we find that no miscarriage of justice resulted.

## IV

Next, defendant argues that she is entitled to a new trial because a transcript of the court's reinstruction of the jury cannot be reproduced. Defendant's argument is framed in terms of a violation of her constitutional right to due process. We find defendant's argument to be without merit.

The trial court's reinstruction of the jury was not transcribed and said transcript apparently cannot be reproduced at this time. The inability to obtain the transcripts of a criminal proceeding may impede a defendant's right to appeal to an extent that a new trial must be ordered. *People v Frechette,* 380 Mich 64, 73; 155 NW2d 830 (1968); *People v Horton (After Remand),* 105 Mich App 329, 331; 306 NW2d 500 (1981). Where only a portion of the trial transcript is missing, the surviving record must be reviewed in terms of whether it is sufficient to allow evaluation of defendant's claim on appeal. The sufficiency of the record depends on the questions that must be

asked of it. *People v Audison,* 126 Mich App 829, 834-835; 338 NW2d 235 (1983).

Our review of the record convinces us that the surviving record in the present case is sufficient to allow complete evaluation of defendant's claims. Apparently, when the trial court reinstructed the jury the original instructions were merely reread.

V

Defendant's next argument involves the sentence imposed by the trial court and the reasons for that sentence.

Defendant first claims that the trial court improperly considered defendant's lack of remorse in sentencing her. It is neither clearly erroneous nor improper for a trial court to consider a defendant's lack of remorse in imposing sentence. *People v Fleming,* 142 Mich App 119, 127; 369 NW2d 499 (1985). The trial judge's statement concerning his belief that defendant's only remorse in this matter is the fact that she was apprehended and convicted is not comparable to a consideration of a refusal to admit guilt. See *People v Stubbs,* 99 Mich App 643; 298 NW2d 612 (1980), *lv den* 410 Mich 907 (1981).

Defendant was sentenced before the Sentencing Guidelines were in effect and before *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), had been decided. Nevertheless, we apply the standards set forth in *Coles* to determine whether the sentence imposed by the trial court shocks the judicial conscience.

Defendant was sentenced to the mandatory two years on the felony-firearm conviction and from 20 to 60 years on the assault with intent to rob while being armed. The record indicates that the trial court took the following factors into consideration in sentencing defendant: 1) the seriousness of the

offense; 2) defendant's lifestyle, *i.e.*, that she is or was a wholesaler and retailer of illegal narcotics; 3) defendant's reputation as a drug dealer and that she prided herself in that reputation; 4) the high volume of defendant's drug trafficking activity; and 5) the fact that defendant was then serving a two-year term on a federal conviction for possession with intent to distribute heroin. The trial court concluded that defendant presented a serious long-term danger to society. Under the circumstances, the sentence imposed by the trial court does not shock the judicial conscience. *Coles, supra.*

## VI

Defendant's final argument is that she was denied effective assistance of counsel as a result of defense counsel's failure to object to the admission of defendant's letter to her husband.

In *People v Vicuna,* 141 Mich App 486, 498; 367 NW2d 887 (1985), this Court held that for state constitutional ineffective assistance of counsel claims, the test set forth in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1977), *reh den* 399 Mich 1041 (1977), must be followed until our Supreme Court states otherwise.

Defendant does not raise issue with the overall performance of counsel. Instead, defendant relies on the second part of the *Garcia* inquiry[2] and

---

[2] In *People v Coyle,* 104 Mich App 636, 639; 305 NW2d 275 (1981), *lv den* 415 Mich 851 (1982), we summarized the *Garcia* test as follows:

"The first branch of the inquiry focuses on the Sixth Amendment right to counsel, for which the Supreme Court has endorsed the standard established in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). *People v Garcia, supra,* 264. To satisfy defendant's right to counsel, his lawyer 'must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations'. *Id.* Aside from reviewing the overall performance of counsel,

claims that defense counsel committed a serious mistake in failing to object to the admission of defendant's letter to her husband. Under the second branch of the *Garcia* inquiry, even where assistance of counsel satisfies the constitutional requirement of performance at least as well as a lawyer with ordinary training and skill in the criminal law, defendant is still entitled to a fair trial. Defendant can be denied this right if his attorney makes a serious mistake. However, a new trial will not be granted unless the reviewing court finds that but for this mistake defendant would have had a reasonably likely chance for acquittal. *Garcia, supra,* p 266.

Even if we were to concede, which we do not, that defense counsel committed a serious mistake such that defendant was denied a fair trial when he failed to object to the introduction of the defendant's letter, we do not find that but for this mistake defendant would have had a reasonably likely chance for acquittal. The evidence against defendant was overwhelming. We therefore conclude that defendant's claim of ineffective assistance of counsel is without merit.

Affirmed.

---

an appellate court will also examine particular mistakes of counsel to safeguard defendant's right to a fair trial, which is the other branch of the inquiry. For this purpose, the *Garcia* Court adopted the standard developed in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969):

" 'However, even where assistance of counsel satisfies the constitutional requirements, defendant is still entitled to a fair trial. Defendant can be denied this right if his attorney makes a serious mistake. But a court should not grant a new trial unless it finds that but for this mistake defendant would have had a reasonably likely chance for acquittal.' *Garcia, supra,* 266."