# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RANDY SCOTT STEVENS,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2016

No. 327160
Jackson Circuit Court
LC No. 13-003860-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES GORDON TINGLEY,

        Defendant-Appellant.

No. 327666
Jackson Circuit Court
LC No. 13-003861

---

Before: BECKERING, P.J., and HOEKSTRA and OWENS, JJ.

PER CURIAM.

In Docket No. 327160, a jury convicted defendant Randy Scott Stevens of the following crimes: count 1, first-degree criminal sexual conduct (CSC) (person under 13, defendant 17 years of age or older) (penile/vaginal), MCL 750.520b(1)(a) and MCL 750.520b(2)(b); count 2, first-degree CSC (relationship, between 13-16) (penile/vaginal), MCL 750.520b(1)(b); count 3, first-degree CSC (relationship, between 13-16) (penile/anal); count 4, first-degree CSC, (person under 13, defendant 17 years of age or older) (aiding and abetting) (digital/vaginal), MCL 750.520b(1)(a) and 750.520b(2)(b); count 5, first-degree CSC (relationship, between 13-16) (aiding and abetting) (digital/vaginal), MCL 750.520b(1)(b); count 6, first-degree CSC (position of authority, between 13-16) (aiding and abetting) (digital/vaginal), MCL 750.520b(1)(b); count 7, second-degree CSC (person under 13) (aiding and abetting) (sexual contact with vagina), MCL 750.520c(1)(a) and MCL 750.520c(2)(b); and count 8, second-degree CSC (person under 13) (aiding and abetting) (sexual contact with breasts), MCL 750.520c(1)(a) and MCL 750.520c(2)(b). The trial court sentenced Stevens as an habitual offender, second offense, MCL 769.10, to prison terms of 25 to 60 years for counts 1, 2, 3, 5, and

-1-

6; 39 to 60 years for count 4; and 15 to 22-1/2 years for counts 7 and 8.  The victim in each of these crimes was Stevens's stepdaughter, BH.

In Docket No. 327666, a jury convicted defendant James Gordon Tingley of the following crimes:  count 1, first-degree CSC (person under 13, defendant 17 years of age or older) (penile/vaginal with JS[1]), MCL 750.520b(1)(a) and MCL 750.520b(2)(b); count 2, first-degree CSC (person under 13, defendant 17 years of age or older) (digital/vaginal with JS), MCL 750.520b(1)(a) and MCL 750.520b(2)(b); count 3, first-degree CSC (person under 13, defendant 17 years of age or older) (penile/oral with JS), MCL 750.520b(1)(a) and MCL 750.520b(2)(b); count 4, first-degree CSC, (person under 13, defendant 17 years of age or older) (digital/vaginal with BH), MCL 750.520b(1)(a) and MCL 750.520b(2)(b); count 5, first-degree CSC (relationship, between 13 and 16, authority) (digital/vaginal with BH), MCL 750.520b(1)(b); count 6, first-degree CSC (relationship, between 13 and 16, same household) (digital/vaginal with BH), MCL 750.520b(1)(b); count 7, second-degree CSC (person under 13, defendant 17 years of age or older) (digital/vaginal with BH), MCL 750.520c(1)(a) and MCL 750.520c(2)(b); and count 8, second-degree CSC (person under 13, defendant 17 years of age or older) (breasts with BH), MCL 750.520c(1)(a) and MCL 750.520c(2)(b).  The trial court sentenced Tingley as an habitual offender, second offense, MCL 769.10, to prison terms of 25 to 50 years for counts 1 through 4; 20 to 40 years for counts 5 and 6; and 15 to 22-1/2 years for counts 7 and 8.  Both defendants appeal as of right.  We affirm.

Stevens's convictions arise from sexual acts perpetrated upon his stepdaughter, BH, beginning when she was 9 years old and continuing until she and her siblings were removed from their home by Children's Protective Services on January 25, 2013, when BH was 14 years old, and from his aiding and abetting[2] Tingley's sexual acts perpetrated upon BH when she was between the ages of 10 and 14.  Tingley's convictions arise from the sexual acts perpetrated on BH, as well as sexual acts perpetrated upon Stevens's daughter, JS, when JS was less than 13 years old.[3]  BH testified regarding the years of sexual abuse, and JS's preliminary examination testimony was read into the record at trial.

Docket No. 327160

I

Stevens first argues that the admission of unfairly prejudicial other-acts evidence denied him a fair trial.  This Court reviews a trial court's decision to admit evidence for an abuse of discretion.  *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).  When the decision involves a preliminary question of law, however, such as whether a rule of evidence

---

[1] JS is Stevens's daughter.

[2] The prosecution theory was that Stevens provided Tingley with access to the victims in exchange for rent or money.

[3] Defendants were tried during a joint trial with separate juries.

precludes admission, this Court reviews the question de novo. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

MRE 404(b)(1) provides the general rule that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). Such evidence may be admissible, however, for "other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

In *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), the Court set forth the prevailing framework for analyzing the admissibility of evidence of other crimes, wrongs, or acts under MRE 404(b). First, the other acts evidence must be offered for a proper purpose. *Id.* at 74. Second, "the evidence must be relevant . . . to an issue or fact of consequence at trial." *Id.* Third, the trial judge must employ the balancing test of MRE 403 to determine whether to exclude the evidence because the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Id.* at 74–75. The "fourth factor articulated in *VanderVliet* suggests that a party may request a limiting instruction under MRE 105 if the trial court decides to admit the challenged evidence." *People v Hawkins*, 245 Mich App 439, 448; 628 NW2d 105 (2001).

Stevens concedes for the sake of argument that the other-acts evidence at issue was logically relevant for a proper purpose. He contends only that this evidence was substantially more prejudicial than probative and thus not admissible under MRE 404(b) and MRE 403. Notably, in addition to charges as a principal for his own personal acts of CSC, Stevens was charged in this case with aiding and abetting the CSC committed by Tingley against BH. The prosecutor presented evidence that Stevens sent BH to Tingley's home and that Stevens received money and favors from Tingley. In this context, it was highly relevant as evidence of a common scheme as well as motive – and not substantially more prejudicial than probative – that to receive financial gain, Stevens had also repeatedly sent his sons to the home of a known sex offender, where they were sexually abused, and that he had forced his wife into prostitution. See MRE 403; MRE 404(b). Second, evidence of Steven's violence toward his family was relevant and admissible for the limited purpose of explaining BH's compliance with Stevens's demands, including her delay in reporting the long-term sexual abuse. See *People v Sabin (After Remand)*, 463 Mich 43, 72-73; 614 NW2d 888 (2000). The probative value of this evidence was not substantially outweighed by the risk of unfair prejudice, and the trial court did not abuse its discretion by admitting this evidence. Finally, with respect to evidence of Stevens's drug problem, in view of the serious nature of the charges against Stevens and the other evidence offered at trial, there was no danger that the jury would give undue weight to evidence of Stevens's drug problem, and thus this evidence does not appear to have injected unfair prejudice. Cf. *People v Brown*, 294 Mich App 377, 384; 811 NW2d 531 (2011). Overall, Stevens is not entitled to relief based on the admission of other acts evidence under MRE 404(b).

-3-

Defendant also argues that the trial court erred by admitting unfairly prejudicial other-acts evidence of uncharged sexual offenses against minors under MCL 768.27a. MCL 768.27a explicitly permits evidence of a defendant's prior uncharged criminal sexual conduct against a minor for any relevant consideration, including propensity. *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012); *People v Pattison,* 276 Mich App 613, 618–19; 741 NW2d 558 (2007). Stevens accepts for the sake of argument that *some* evidence of uncharged sexual offenses against minors was admissible under MCL 768.27a(1), and he argues only that the trial court abused its discretion by allowing the prosecutor to engage in "overkill" with respect to the quantity of evidence offered. Although evidence presented under MCL 768.27a remains subject to MRE 403, when applying MRE 403 in this context, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Weighing the propensity inference in this manner, the trial court did not abuse its discretion by admitting the evidence in question under MCL 768.27a. While there was considerable evidence offered under this statute, we do not share Stevens's concerns that a jury would be "overwhelmed" by the amount of evidence, and indeed the trial court was in the best position to make this determination based on "a contemporaneous assessment of the presentation, credibility, and effect of testimony[.]" *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (citation omitted). In short, the trial court did not abuse its discretion by admitting evidence of other acts of sexual abuse against minors under MCL 768.27a.

II

Stevens argues that his trial counsel rendered ineffective assistance when he failed to object to the testimony of Dr. Lisa Markman, a pediatrician who examined BH, when she described BH's statements to her regarding sexual abuse. Stevens failed to preserve this claim by moving for a new trial or an evidentiary hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Our review is therefore limited to mistakes apparent on the record. *Id*.

Defense counsel is presumed to have afforded effective assistance and defendant bears the burden of proving otherwise. *People v Rockey,* 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Uphaus (On Remand*), 278 Mich 174, 185; 748 NW2d 899 (2008). Counsel must have made errors so serious that he was not performing as the "counsel" guaranteed by the federal and state constitutions. *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001). In addition, defense counsel's deficient performance must have prejudiced defendant. *Id.* To demonstrate prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.*

"Hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). As a general rule, hearsay is inadmissible. MRE 802. However, an exception exists "for purposes of medical treatment." MRE 803(4). The medical treatment exception is premised on the declarant's motive to tell the truth in order to receive proper medical care. *People v McElhaney,* 215 Mich App 269, 280; 545 NW2d 18 (1996). Particularly in cases of sexual assault, "a victim's complete history and a recitation of *the totality of the circumstances of*

-4-

*the assault* are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011) (emphasis added).

Here, BH was referred to Dr. Markman, a licensed physician who is board certified in pediatrics and associate director of the child protection team at the University of Michigan, for evaluation to determine whether she had been sexually assaulted. Dr. Markman obtained the disputed testimony from BH during the pre-examination/medical interviews. The information obtained during the pre-examination/medical interview was crucial to Dr. Markman's ability to determine whether BH had been sexually assaulted. Thus, the hearsay statements would have been properly admitted under MRE 803(4).[4] Counsel cannot be deemed ineffective for failing to raise a futile objection. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Stevens has failed to demonstrate that he was denied the effective assistance of counsel.

III

Stevens contends that the prosecutor engaged in an improper attack on the credibility of one of Tingley's defense witnesses, SA, by laughing during one portion of SA's testimony. To preserve a claim of prosecutorial error, the defendant must timely and specifically object. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Stevens's counsel did not object to the alleged error, did not ask for a curative instruction, and did not move for a mistrial. Unpreserved claims of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Parker,* 288 Mich App 500, 509; 795 NW2d 596 (2010). If the prejudicial effect of a prosecutor's comments could have been cured by a timely instruction, no error requiring reversal may be found. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Here, one of Tingely's stepdaughters, DA, testified that Tingley had sexually abused her as a child. When SA, another of Tingley's stepdaughters, subsequently testified that DA had "false memory syndrome" and "liked to make up stories," Tingley's attorney commented to the prosecutor, "Would you like to laugh a little louder," to which the prosecutor replied, "I'm sorry, I didn't realize I was under oath."

In *People v Clark*, 68 Mich App 48, 51-52; 241 NW2d 756 (1976), the prosecutor laughed "during the course of" a defense witness's testimony. In contrast, in the present case, the prosecutor allegedly laughed only in response to SA's testimony regarding false memory syndrome. As in *Clark*, Tingley's counsel made a reference regarding the laughter on the record. And, as in *Clark*, "neither [Tingley's counsel nor Stevens's counsel] voiced an objection nor

---

[4] This case is factually distinguishable from *People v Shaw*, __ Mich App ___; ___ NW2d ___ (2016), in which a panel of this Court concluded that MRE 803(4) did not apply where the forensic physical examination of the complainant was conducted seven years after the last alleged instance of abuse, the complainant was referred to the pediatrician by the police in conjunction with the police investigation into the allegation of abuse by the defendant, and during the seven years since the last incident of abuse the complainant had seen a different physician, who was not called as a witness, for gynecological care.

asked for a mistrial," *id*. at 52, nor did they request any other action by the trial court. In *Clark*, this Court held that under such circumstances, "[c]ounsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." *Id*. Moreover, the trial court in this case instructed the jurors that they were the sole judges of the witnesses' credibility and that the lawyers' comments were not evidence. The court's instructions were sufficient to dispel any perceived prejudice. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Juries are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Stevens has not demonstrated plain error affecting his substantial rights.

IV

Stevens argues that the trial court improperly admitted evidence under MRE 803(3) of statements that JS made to a detective regarding her fear of coming back to her hometown to testify and her fear that Stevens was going to kill her. He asserts that JS's state of mind was not at issue with respect to any of the elements of the crime charged or to any asserted defense.

Pursuant to MRE 402, all relevant evidence is admissible at trial. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. MRE 401. MRE 802 provides that "[h]earsay is not admissible except as provided by these rules." Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A "statement" is either "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). The relevant hearsay exception at issue in this case is MRE 803(3), also known as the state of mind exception, which provides that the following is not excluded by the hearsay rule, even if the declarant is available to testify as a witness at trial:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. [MRE 803(3).]

JS's professed fear of Stevens and her expressed fear that he might kill her were statements of her then-existing state of mind. In addition, her state of mind was relevant to why JS did not tell anyone about the sexual abuse, and was relevant in light of defendant's defense that the victims fabricated the allegations against him. Even assuming that the trial court abused its discretion by admitting the testimony, a preserved evidentiary error requires reversal only if the defendant establishes that it is more probable than not that the error was outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001), citing *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). "An error is deemed to have been 'outcome-determinative' if it undermined the reliability of the verdict. In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000) (citations omitted). Here, JS's therapist offered unchallenged testimony that was nearly identical to the testimony offered by the detective. Additionally, JS testified that she feared Stevens. Thus, the

detective's testimony was cumulative to the properly admitted testimonies of the therapist and JS and not outcome determinative.[5]

V

Stevens argues that the prosecutor improperly elicited opinion testimony from Dr. Markman that she did not feel that BH was lying. Stevens did not object to the testimony that he is challenging. In the absence of a proper objection preserving the issue at trial, this Court's review of an evidentiary issue is limited to plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763.

The challenged testimony was elicited during Tingley's counsel's cross-examination of Dr. Markman. Thus, Stevens's reliance on authority holding that "it is misconduct for a prosecutor to elicit opinion testimony from one witness that another witness has lied," see *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985), is misplaced. Similarly, Stevens's argument that "[t]his testimony was an improper attempt to have an authoritative witness bolster the prosecution's case by giving on opinion on [BH's] veracity for truthfulness" is misplaced as the prosecutor did not elicit the testimony. Nonetheless, the Supreme Court has held that even when an expert in CSC cases offers improper opinion testimony *during the prosecution's case* that a sexual assault in fact occurred, "generally effective cross-examination will prevent the jury from drawing such a conclusion; however a limiting instruction may also be necessary and should be given on request."

Stevens's counsel did not object to the testimony, which could have cured any prejudice by obtaining an appropriate cautionary instruction. *Buckey*, 424 Mich at 18. Stevens has failed to demonstrate plain error affecting his substantial rights.[6]

VI

Stevens presents a number of issues in a Standard 4 brief.

---

[5] To the extent that Stevens challenges the admission of the evidence under MRE 403, that unpreserved claim is subject to the plain-error standard, which requires defendant to show that that a clear or obvious error affected the outcome of the proceedings. *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999). As indicated above, Stevens has failed to demonstrate outcome-determinative error.

[6] To the extent that Stevens is raising an ineffective assistance of counsel argument, by failing to include it in his statement of questions presented, he has waived this Court's consideration of the issue. See *People v Bennett,* 290 Mich App 465, 484 n 4; 802 NW2d 627 (2010). Waiver extinguishes any error, "thereby foreclosing appellate review." *People v McKinley,* 496 Mich 410, 418; 852 NW2d 770 (2014).

A

Stevens first argues that the trial court abused its discretion by refusing to allow Stevens to cross-examine BH about her sexual relations with another person, as an exception to the rape shield law, to offer an alternative explanation for the medical testimony regarding the injuries to BH's hymen. He contends that the trial court's ruling denied him the opportunity to cross-examine BH about her recanted preliminary exam testimony and to present a defense. We review a trial court's evidentiary decision for an abuse of discretion. *Unger*, 278 Mich App at 216.

Stevens's argument at trial and on appeal is based upon his interpretation of BH's testimony at the preliminary examination. However, due to the ambiguous nature of the question posed and BH's response, the trial court clarified BH's preliminary examination testimony on the record before ruling on Stevens's counsel's request. BH stated that she had never had sex with the other person. Contrary to Stevens's assertion, BH's statement was not a recantation of her preliminary exam testimony but, rather, a clarification of her preliminary exam testimony. Because BH denied having sexual intercourse with the other person, and Stevens presented no evidence that BH had sexual intercourse with the other person, the trial court did not abuse its discretion by refusing to allow Stevens to cross-examine BH about her sexual activity with the other person.

B

Stevens argues that the trial court erred when it denied his motion for a mistrial of the aiding and abetting charges because no evidence was presented of any payment from Tingley to Stevens for access to the victims, or that Stevens had actual knowledge of a crime, and because there were alternative explanations for the transfer of funds from Tingley to Stevens. We review de novo a trial court's decision on a motion for a directed verdict. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). When ruling on a motion for a directed verdict, the court must consider the evidence presented by the prosecutor up to the time the motion was made in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *People v Szalma*, 487 Mich 708, 721; 790 NW2d 662 (2010).

Stevens was charged with first-degree and second-degree criminal sexual conduct on an aiding and abetting theory. To establish that a defendant aided and abetted a crime, the prosecution must show that 1) the crime charged was committed by the defendant or some other person, 2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and 3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid or encouragement. *People v Izarraras-Picante*, 246 Mich App 490, 494-485; 802 NW2d 627 (2001).

Stevens does not dispute that Tingley committed the offenses of first- and second-degree CSC against BH.[7] BH testified that Stevens sent her to Tingley's house and that Tingley sexually molested her while she was there. She also testified that Stevens told Tingley that he would have to pay money if he wanted her there, and that she once delivered $300 from Tingley to Stevens. Evidence was also presented that Stevens had a drug problem and that he had prostituted his wife in the past to get funds to purchase drugs. Viewed in the light most favorable to the prosecution, this evidence was sufficient to allow a rational trier of fact to find that Stevens performed acts that assisted Tingley's CSC crimes and that he intended the commission of the crimes or knew that Tingley intended the commission of the crimes at the time that he gave aid or encouragement and, therefore, that Stevens was guilty beyond a reasonable doubt of aiding and abetting first- and second-degree criminal sexual conduct. Stevens's argument that he presented alternative explanations for the payment of money from Tingley to Stevens is not persuasive because the prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility." *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000). Rather, the prosecution is only required to convince the jury, in the face of whatever contradictory evidence the defendant may provide, that the elements of the crime have been proven beyond a reasonable doubt. *Id*.

C

Stevens argues that the trial court erred by relying on hearsay in ruling on the admissibility of the other-acts evidence, and that the reliance on the hearsay evidence denied him his right of confrontation. Stevens did not raise objections on these grounds at the hearing on the admissibility of the other-acts evidence under MRE 404(b) and MCL 768.27a.[8] Thus, this argument is unpreserved and is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

A trial court is not bound by the rules of evidence when determining whether evidence is admissible. MRE 104(a); MRE 1101(b); *People v Barrera*, 451 Mich 261, 274; 547 NW2d 280 (1996). Stevens has not cited any authority in support of his argument that the trial court erred by relying on hearsay in ruling on the admissibility of the other-acts evidence. Additionally, the Confrontation Clause only applies to statements used as substantive evidence at trial. *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). Stevens has failed to demonstrate plain error affecting his substantial rights.

D

Stevens argues that a jailhouse witness's testimony was unreliable and untrustworthy because the witness could have obtained knowledge about the case from the media and because

---

[7] Stevens did not argue below, as he does on appeal, that he did not have actual knowledge that Tingley committed the offenses of first- and second-degree CSC against BH.

[8] Stevens's objection was to the leading nature of the questions.

the witness had an ill motive against Tingley. However, where witness credibility is at issue, the question of credibility is for the factfinder to decide. *People v Lemmon*, 456 Mich 625, 642-647; 576 NW2d 129 (1998). Stevens also asserts that the prosecutor knowingly elicited perjured testimony when the witness testified that he did not receive a deal from the prosecutor in exchange for his testimony regarding statements made to him by Tingley. Stevens did not object to the witness's testimony that he did not receive a plea bargain in exchange for his testimony in this case. We review this unpreserved issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

A "prosecutor may not knowingly use false testimony to obtain a conviction." *People v Lester,* 232 Mich App 262, 277; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault,* 495 Mich 142, 146; 845 NW2d 731 (2014). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval,* 282 Mich App 379, 389; 764 NW2d 285 (2009). The defendant is only entitled to relief "if the tainted evidence is material to the defendant's guilt or punishment." *Aceval,* 282 Mich App at 389.

Stevens has not shown that the witness testified falsely. The record shows only that the witness pleaded guilty in another case after offering to supply information regarding statements made by Tingley in the present case. Stevens has not presented any evidence to show that the witness's testimony that he did not receive a plea bargain in exchange for his testimony in this case was false. Stevens has failed to demonstrate plain error affecting his substantial rights.

E

Stevens asserts that the prosecution suppressed material evidence favorable to the defense in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Stevens did not raise the issue of *Brady* violations in the trial court. Our review is therefore limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

The right to due process under US Const, Am XIV, requires that the prosecution not suppress material evidence favorable to the defense. *Brady*, 373 US 83; *People v Fox (After Remand),* 232 Mich App 541, 549; 591 NW2d 384 (1998). To prove a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence is material. *People v Chenault,* 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id.* at 150. To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Stevens simply lists a number of items that the prosecution allegedly failed to produce in discovery. This argument is abandoned because Stevens fails to explain or rationalize his position; he has made no attempt to explain how the evidence was favorable to him, and has made no attempt to establish the materiality of the evidence. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

F

Stevens argued that he was denied due process of law by the delayed transcription of one witness's testimony.[9] This unpreserved claim is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

A criminal defendant's right of appeal is guaranteed by our state constitution. Const 1963, art 1, § 20. In *People v Federico,* 146 Mich App 776, 799–800; 381 NW2d 819 (1985), this Court explained:

> The inability to obtain the transcripts of a criminal proceeding may impede a defendant's right to appeal to an extent that a new trial must be ordered. *People v Frechette*, 380 Mich 64, 73; 155 NW2d 830 (1968); *People v Horton (After Remand),* 105 Mich App 329, 331; 306 NW2d 500 (1981). Where only a portion of the trial transcript is missing, the surviving record must be reviewed in terms of whether it is sufficient to allow evaluation of defendant's claim on appeal. The sufficiency of the record depends on the questions that must be asked of it. *People v Audison,* 126 Mich App 829, 834–835; 338 NW2d 235 (1983).

Stevens contends that the delay in providing the missing transcript was part of a plan on the part of the prosecutor and the trial court to deny him due process. Stevens has presented no evidence to support his unsupported assertions. Nonetheless, Stevens's appellate counsel received the transcript of the missing testimony four months before his appellate brief was due in this Court and Stevens has not demonstrated that his right of appeal was impeded by the delayed download and transcription of the testimony. Stevens has failed to demonstrate plain error affecting his substantial rights.

G

Stevens argues that the cumulative effect of the errors in this case denied him a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted. Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007) (citations omitted). In this case, Stevens failed to establish any errors. Accordingly, there can be no cumulative effect of errors requiring reversal. *Id*.

Docket No. 327666

---

[9] The delayed transcription appears to have been the result of a technical glitch in downloading the video files to the digital court player website from which the court reporter can access the video files to prepare the transcripts.

Tingley argues that he was denied a fair trial by the prosecutor's comment that Dr. Markman's medical diagnosis proved that BH was telling the truth. We review this issue de novo to determine whether Tingley was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004).

The test for prosecutorial error is whether the prosecutor's remarks deprived the defendant a fair and impartial trial. *Dobek,* 274 Mich App at 63. A prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness is testifying truthfully. *People v Bahoda,* 448 Mich 261, 276; 531 NW2d 659 (1995). A curative instruction is usually sufficient to cure the prejudicial effect of an inappropriate prosecutorial comment. *People v Cain,* 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated not in relevant part by 495 Mich 874 (2013). "A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski,* 286 Mich App 634, 708; 780 NW2d 321 (2009) (quotation marks omitted). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn,* 279 Mich App 31, 36; 755 NW2d 212 (2008).

Here, the prosecutor stated during rebuttal closing argument:

> Pretty desperate to have you disbelieve Dr. Markman as well. You know, and what does Dr. Markman say that adds to this case, okay? Because she talks about [BH] having those two complete transsexuals (ph) [sic] of her hymen. Not tears, two complete, permanent transections of her hymen from repeated penetrating vaginal trauma. It is medically diagnostic of sexual abuse. That's what she said. So what does that mean? That means [BH] is absolutely medically, scientifically proven to be telling the truth.

The following colloquy immediately followed:

> [*Tingley's counsel*]: Your Honor –
>
> [*The prosecutor*]: And I get it.
>
> [*Tingley's counsel*]: Your Honor –
>
> [*The prosecutor*]: I get it.
>
> *The court*: Stop.
>
> [*Tingley's counsel*]: She's now saying that it's a medical certainty that she's telling the truth? This has gone way above what any type of expert can say. I have to ask for a mistrial at this point.
>
> *The court*: Your request for a mistrial is denied. Rephrase. It does not prove that she's telling the truth.
>
> [*The prosecutor*]: Thank you. In –

[*Tingley's counsel*]: Your Honor, also, it is mis – mischaracterizing exactly what Dr. Markman said. She never testified that that was from sexual abuse. In fact, she testified it could be from any other trauma, not necessarily sexual abuse, and it certainly has nothing to do with telling the truth.

*The court*: Noted.

[*The prosecutor*]: Thank you. You listened to her testimony. If you don't remember it, that's my recollection of what she says, repeated penetrating vaginal trauma. What that tells you, what you can use it for, is corroboration that BH is telling the truth about what her dad [Stevens] did to her. Now, I get it, that's not corroborative medically speaking of what she says Jim did to her because she talks about digital penetration with Jim. That's not gonna cause that. But it most assuredly corroborates the truth of what she says about her dad.

Tingley's counsel immediately objected and the trial court instructed the jury that Dr. Markman's findings did not prove that BH was telling the truth. Because the prosecutor acknowledged the error and properly rephrased her statement to argue that the medical evidence corroborated BH's testimony about what *Stevens* did to her, and the prosecutor also acknowledged that the digital penetration allegedly performed by Tingley would not have caused the hymen injury identified by Dr. Markman, whatever prejudice Tingley might have suffered was minimal and was cured by the trial court's curative comment and the trial court's jury instruction that "[t]he lawyers' statements and arguments are not evidence." See *Bahoda*, 448 Mich at 281. Given that the prejudicial effect of the prosecutor's comment was alleviated by the trial court's curative instruction, the trial court did not abuse its discretion in denying Tingley's motion for a mistrial. Moreover, Tingley cannot establish prejudice in light of the overwhelming evidence against him.

Affirmed.

/s/ Jane M. Beckering
/s/ Joel P. Hoekstra
/s/ Donald S. Owens