*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MYRON DAVIS,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2019

No. 338112
Wayne Circuit Court
LC No. 16-008385-01-FC

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for second-degree murder, MCL 750.317, carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and possession of a firearm during a felony (felony-firearm), MCL 750.227b. We affirm.

This case arises out of a shooting that occurred at the Johnson Center Park in Detroit on July 28, 2016. Kevin Martin, Ronald Branam, David Thornton, and Mookie[1] were at the park. At approximately 8:00 or 9:00 p.m., Quintell Ray, Glynn Stephenson, and Ray's girlfriend, Sinora, were driving around. Ray drove past the park and saw Martin, Branam, Mookie, and Thornton at the park. Ray parked the minivan and walked to the park with Stephenson.

After a period of time, defendant walked around the corner with a gun in the pocket of his shorts. Stephenson walked up to defendant and defendant put his arm around Stephenson's neck. Defendant swung the gun at Stephenson, who tried to escape from defendant's hold. Defendant shot Stephenson and left him on the ground before walking away. Stephenson crawled toward Ray and asked for help. Defendant then walked back to Stephenson and shot him in the face.

---

[1] Mookie's real name was not provided at trial.

At trial, Martin testified that defendant was not at the park during the shooting. Martin also testified that some of his statements to the police were untrue. During the prosecution's attempt to impeach Martin, the court reporter's tape malfunctioned and the remaining direct-examination and cross-examination testimony was not transcribed. A portion of the beginning of the prosecution's rebuttal argument was also inadvertently not transcribed.

After trial, defendant filed a motion to settle the record for appellate review.[2] The trial prosecutor and defense counsel submitted a set of stipulated facts, which included that: (1) the prosecution did not impeach Martin because of a technical difficulty encountered when loading a recording of Martin's police interview, and (2) on cross-examination, Martin testified that he felt threatened by the prosecution and the police to tell a story that was not true. Defendant argued that the set of stipulated facts was inaccurate and not sufficiently detailed. Defendant claimed that the prosecution did not impeach Martin because the trial court admonished the prosecutor for trying to impeach Martin, who already told the prosecutor that he lied. Defendant also claimed that Martin testified on cross-examination that he told the prosecutor that defendant did not shoot Stephenson and that, although Martin was initially a suspect, he was no longer a suspect because "they told me if I said Mr. Davis did it, I was going to walk. It was a no brainer. I said he did it," and that "I lied. I was scared. I wanted to get out of trouble."

The trial prosecutor and defense counsel disagreed with defendant's recall regarding the prosecution's failure to impeach Martin, but did not agree or disagree with defendant's recollections regarding Martin's testimony. The trial court determined that the record was sufficiently settled with the set of stipulated facts, and declined to have the presiding trial judge or Martin testify regarding their recall of the testimony or events.

## I. RIGHT TO APPELLATE REVIEW

Defendant argues that his right to appellate review was denied since the trial transcript was not fully settled because the prosecutor and defense counsel could not determine whether defendant's recollection of Martin's testimony was accurate. We disagree.

Whether a defendant was denied the due process right to appellate review is a constitutional issue reviewed de novo. See *People v Jackson*, 292 Mich App 583, 590; 808 NW2d 541 (2011) (stating that constitutional issues are reviewed de novo).

A defendant's right to an appeal may be so impeded because of the inability to obtain the transcripts of the criminal proceedings that a new trial must be ordered. *People v Horton (After Remand)*, 105 Mich App 329, 331; 306 NW2d 500 (1981). "Where only a portion of the trial transcript is missing, the surviving record must be reviewed in terms of whether it is sufficient to allow evaluation of defendant's claim on appeal." *People v Federico*, 146 Mich App 776, 799; 381 NW2d 819 (1985). A defendant is not entitled to a new trial when the surviving record allows this Court to completely evaluate a defendant's claims. *Id*. at 800.

---

[2] Defendant's postconviction motions and hearings were not presided over by the same judge who presided over defendant's trial.

Specifically, defendant argues that the trial prosecutor did not play the recording of Martin's police interview because the trial court admonished the prosecutor for putting a witness on the stand who the prosecutor knew would lie. The trial prosecutor and defense counsel agreed, however, that the prosecutor did not play the recording because of technical difficulties, and disagreed with defendant's version of events. Defendant also argued that during Martin's cross-examination, Martin testified in greater detail about how he was pressured into lying about defendant shooting Stephenson. However, the trial prosecutor and defense counsel stipulated only that Martin testified that he felt threatened and pressured by the police and the prosecutor's office to tell a specific story that was not true. When the trial prosecutor and defense counsel were given defendant's recall of Martin's testimony, the prosecutor and defense counsel returned a statement that neither remembered Martin testifying to what defendant reported, and therefore, they did not agree or disagree with defendant's report.

The discrepancies between the stipulated facts submitted by the trial prosecutor and defense counsel and defendant's recollections do not entitle defendant to a new trial. The stipulated facts state that Martin testified he felt threatened and pressured by the police and the prosecutor's office to tell a specific story that was not true. This stipulation is sufficient for this Court to analyze defendant's issue on appeal regarding the prosecution's alleged knowing use of Martin's perjured testimony. Although defendant's memory of Martin's testimony was more detailed than the stipulated facts, the stipulated facts allow this Court to analyze the issue of prosecutorial misconduct because Martin testified that he felt pressure from the prosecutor to lie. Because the stipulated facts submitted by the trial prosecutor and defense counsel are sufficient to analyze defendant's claim of prosecutorial misconduct, defendant's claim fails.

Defendant also argues that he is entitled to a new trial based on the presumption of accuracy. "Where a defendant is able to make a colorable showing that inaccuracies in transcription have adversely affected the ability to secure postconviction relief, and such matters have seasonably been brought to the trial court's attention, the defendant is entitled to a remedy." *People v Abdella*, 200 Mich App 473, 475-476; 505 NW2d 18 (1993). "[T]o overcome the presumption of accuracy and be entitled to relief, a petitioner must satisfy the following requirements: (1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief pursuant to subchapters 7.200 and 7.300 of our court rules." *Id*. at 476 (footnotes omitted).

Defendant satisfied the first two requirements to overcome the presumption of accuracy by filing a motion to settle the record within the time limit stated in MCR 7.210(B)(2)(a) and arguing that the transcript was inaccurate because it omitted at least a portion of the prosecution's direct-examination and defense counsel's entire cross-examination of Martin. However, defendant did not provide any independent corroboration to support his recall of Martin's testimony because the trial prosecutor and defense counsel did not remember Martin's testimony as defendant reported, and the trial court declined to allow Martin or the presiding trial judge to testify regarding Martin's testimony. Further, defendant failed to "describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief . . . ." *Abdella*, 200 Mich App at 476. To show that defendant's ability to secure postconviction relief was adversely affected, defendant must demonstrate that he was actually prejudiced by the inaccuracy, meaning that, but for the inaccuracy, the jury would have acquitted

him. *Id*. at 476 n 3, citing MCR 6.508(D)(3)(b)(*i*) (stating that a defendant must demonstrate "actual prejudice," which means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."). If Martin did testify that he lied when he said that defendant shot Stephenson, Ray's testimony nonetheless detailed how defendant shot Stephenson. The jury was entitled to assess the credibility of Martin's and Ray's testimony, and "[w]e do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Accordingly, defendant, having failed to satisfy the requirements set forth in *Abdella*, is not entitled to a new trial on the basis of the presumption of accuracy.

## II. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution engaged in misconduct when the prosecutor knowingly presented Martin's false testimony and improperly commented on Martin's veracity during closing argument. We disagree.

To preserve a claim of prosecutorial misconduct, a defendant must timely and specifically object, "except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). A defendant must also request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant neither objected to the prosecution's use of the challenged testimony and improper comments during closing arguments, nor requested a curative instruction. Therefore, defendant's prosecutorial misconduct claim is unpreserved.

A claim of prosecutorial misconduct is reviewed de novo to determine if a defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). However, when a claim of prosecutorial misconduct is unpreserved, "appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is only warranted if the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceedings. *Id*. at 763-764.

It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, [which] is the crucial inquiry for due process purposes. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or

-4-

the court's culpability. [*People v Aceval*, 282 Mich App 379, 389-390; 764 NW2d 285 (2009) (quotation marks and citations omitted; alteration in original).]

Defendant argues that the prosecution knowingly solicited Martin's perjured testimony. In the stipulation of facts, the trial prosecutor and defense counsel concurred that Martin testified he felt threatened and pressured by the police and the prosecutor's office to tell a specific story that was not true. At trial, Martin admitted that some of the statements he made to the police were untrue. Martin testified at trial that defendant was not at the park. Instead, Martin asserted at trial that he texted and called defendant to attempt to buy cocaine from defendant, and also told defendant that Stephenson was at the park. Defendant told Martin to meet him at the store down the street from the park. While Martin was at the store, he heard gun shots, and when he returned to the park, Stephenson was dead on the sidewalk.

Although Martin admitted that he felt threatened and pressured to tell an untrue story, defendant fails to identify what was untrue about Martin's trial testimony. To establish perjury, a defendant has the burden to demonstrate that the testimony was actually false. See *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016) (stating that "defendant has failed to show that the testimony elicited by the prosecution was actually false . . . .").

Defendant implies that the false statements Martin made to the police constituted perjury. However, statements made to the police are not made under oath, and therefore, cannot constitute perjury. See *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004) (quoting the perjury statute, MCL 750.423). Martin testified at trial that his statements to the police were untrue, but that his trial testimony was true. Thus, although Martin admittedly lied in his police interview, there is no evidence to suggest that Martin was untruthful during his trial testimony or committed perjury. The mere existence of conflicting statements by a witness does not establish that a prosecutor knowingly permitted false testimony. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998) (stating that reversal is not warranted simply because some of the witnesses' trial testimony differed from their statements to the police, when there was "no evidence that the prosecutor attempted to keep the contents of those previous statements from [the] defendant.").

Defendant appears to conflate the inconsistencies between Martin's statements to police and Martin's testimony at trial with perjury. As noted, and consistent with *Parker*, the prosecutor did not conceal the inconsistencies attributable to Martin and defendant was afforded the opportunity to impeach the witness during cross-examination. Defendant's argument to some degree, therefore, pertains more to an issue of credibility rather than perjury. As stated by this Court, "the existence of a prior inconsistent statement is not evidence that [the witness's] trial testimony was actually false." *Bass*, 317 Mich App at 275. The jury was free to believe or discredit any of Martin's trial testimony. See *Unger*, 278 Mich App at 222.

In addition, Martin did not testify that defendant shot Stephenson or that defendant was armed with a weapon. Therefore, it is not reasonably likely that Martin's testimony had any prejudicial effect with regard to the jury's deliberation on the charges of first-degree murder, CCW, felon in possession of a weapon, felon in possession of ammunition, or felony-firearm. Because defendant has failed to establish that Martin's trial testimony was false, his claim that the prosecutor engaged in misconduct by knowingly soliciting perjured testimony fails.

Defendant further argues that the prosecution engaged in misconduct by improperly commenting on Martin's veracity during closing argument. Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences arising from the evidence as it relates to their case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Defendant asserts that the prosecutor improperly argued her personal opinion regarding Martin's veracity. During the prosecution's closing argument, the prosecutor twice commented on Martin's veracity:

Now, Mr. Martin, Black Kevin. What does he say? Initially he says he texts [defendant]. He says he texted him dog out there. And what he says he meant by that was I, speaking in the third person, I'm out there. I want you, [defendant], to know that I'm out there.

And does that make sense? Does that make sense to you?

Or do you think maybe Kevin Martin was telling the defendant, dog is Glynn Stephenson. Glynn Stephenson is out here. You've been looking for him to kill him. Guess what? He's right here. Right where you dropped me off. Come on back. And then what happens, [defendant] calls him.

And Kevin tells you that immediately, or initially. He tells you the defendant called him on the phone and he talked to the defendant and told the defendant everyone who was at the park. That's what he said. Then he changes his story. Oh, no, no, I'm meant when I talked to his runner. His dope friend.

And I told him who was all at the park. And then he changes the story again, no, that's not exactly what I mean. That's not what I said. I meant that I just wanted some dope. I didn't – we didn't talk about who was at the park at all.

He kept changing his story. He kept changing his story. But initially he said, yes, I texted [defendant], I wanted to let him—I wanted to communicate with him the [telephone] number. And then he, [defendant], called me. I spoke with him. And that's collaborated [sic] by the phone records. You have the phone number. You can go through it at length if you want. You have an entire day. That's what Kevin Martin says.

* * *

So that brings credibility. Especially Mr. Martin. The Judge will instruct you that you are free to accept all, none, or part of any person's testimony.

And he was all over the place. He was all over the place. You saw him sitting up there. You saw him shaking. You saw him nervous. Does he have any special reason to lie or any special reason to tell the truth?

I would submit to you he is scared, he is nervous, he is concerned about the fact that the person who shot Glynn Stephenson is sitting a few feet away from him. He's concerned about talking to strangers. He's concerned about talking in front of the spectators here. I think he's also probably concerned about his street presently.

* * *

Do you think that Kevin Martin was worried about being labeled a snitch? And you heard he's been convicted. You heard he's on parole. You saw him brought out by the sheriff's deputies.

Do you think he's worried about that? Do you think that might influence his testimony a little bit? Use your common sense, does he have a special reason to lie to you?

The prosecutor's comments during closing argument were permissible comments on Martin's testimony and on his credibility. The prosecution argued that even though Martin's testimony was not entirely consistent, the jury should focus on Martin's telephone call to defendant, and a possible reason for the telephone call. This testimony was in evidence, and the reason for the telephone call was a reasonable inference arising from the evidence. See *Bahoda*, 448 Mich at 282. The prosecution's second comment on Martin related to Martin's credibility. The prosecution's statements refer to Martin's demeanor during his testimony, and reasonable inferences that the jury could make from his demeanor. Nothing in the prosecution's argument suggests that the prosecutor had some special knowledge relating to Martin's veracity. See *Seals*, 285 Mich App at 22. Therefore, defendant's argument that the prosecution engaged in misconduct during closing argument fails.

Defendant further argues that the prosecution engaged in misconduct during the grand jury proceedings when neither eyewitness Deborah Broogerdi nor Calvin Kendricks was called to testify. Defendant asserts that the prosecution did not call Broogerdi or Kendricks as witnesses because it knew that their testimony would not support the prosecution's theory that defendant killed Stephenson. Defendant does not provide any support for the proposition that the prosecution must call all available witnesses at a grand jury proceeding. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Moreover, defendant concedes that Broogerdi and Kendricks were called as witnesses at trial, and testified that they heard that the shooter's name was Tyrone, and Kendricks testified about the physical description of the shooter. Based on defendant's convictions, the jury did not find this testimony persuasive, and defendant does not argue that Broogerdi's or Kendricks's testimony before the grand jury would have resulted in a different outcome. "[I]ssues of witness credibility are matters for the jury and not this Court." *People v Railer*, 288 Mich App 213, 219; 792 NW2d 776 (2010).

Defendant also argues that defense counsel was ineffective for failing to object to the prosecution's use of perjured testimony and the prosecutor's improper statements regarding Martin's veracity during closing argument. We disagree.

To properly preserve an ineffective assistance of counsel claim, a defendant must move for a new trial or a *Ginther*[3] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or a *Ginther* hearing in the trial court. Therefore, defendant's ineffective assistance of counsel claim is unpreserved. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). To succeed on a claim of ineffective assistance of counsel, "a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The question of whether counsel performed reasonably is "an objective one and requires the reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Vaughn*, 491 Mich at 670, quoting *Strickland*, 466 US at 690. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant's arguments that defense counsel was ineffective for failing to object to the prosecution's use of perjured testimony and to the prosecution's improper comments in closing argument regarding Martin's veracity must fail. As discussed, defendant failed to demonstrate that Martin's trial testimony was untrue, and the prosecutor's comments regarding Martin's veracity were proper. Therefore, any objection defense counsel would have made would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Additionally, defense counsel may have believed that it was better trial strategy to not draw the jury's attention to the issue of Martin's credibility. See *People v Horn*,

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

279 Mich App 31, 40; 755 NW2d 212 (2008).  Accordingly, defendant has failed to establish that defense counsel provided ineffective assistance of counsel.

Affirmed.


/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto